ELLEN F. ROSENBLUM
Attorney General
JILL SCHNEIDER  #001619
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  Jill.Schneider@doj.state.or.us

Attorneys for Defendant State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HAYLEE CRAMBLIT, | Case No.  **XX-CV-XXXX-XX** |
| Plaintiff, | NOTICE OF REMOVAL |
| v. | |
| STATE OF OREGON, by and through the Oregon Department of Human services, JODIE HOBERG, in her individual capacity, and BRIAN YARNELL, in his individual capacity, | |
| Defendants. | |

PLEASE TAKE NOTICE that the civil case of the above captioned case *Haylee Cramblit v. State of Oregon, et. al.,* Lane County Circuit Court Case No. 21CV09189 is hereby removed to the United States District Court for the District of Oregon, Eugene Division, pursuant to 28 USC § 1331. § 1441 and 1446. The grounds for removal are as follows:

1. On February 22, 2024, plaintiff filed her Complaint in the Lane County Circuit Court, Case No. 21CV09189. Pursuant to 28 USC § 1446(a), a copy of the Complaint is

Page 1 -   NOTICE OF REMOVAL
JS/lnt/960166036

attached hereto as **Exhibit 1**.

2. Defendants were served on March 7, 2024.

3. The Complaint contains a claim for violation of the United States Constitution, as well as state law claims of employment discrimination. Specifically, the third claim for relief asserts a claim under 42 USC § 1983. The Court has jurisdiction over the civil rights claim pursuant to 28 U.S.C. § 1331, since that claim raises federal questions. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

4. Pursuant to 28 USC § 1446(d), a copy of this Notice of Removal is being served upon Plaintiffs and a copy has been efiled with the Lane County Circuit Court.

WHEREFORE, the above captioned case is removed from the Lane County Circuit Court and to the U.S. District Court for the District of Oregon.

DATED April __2__, 2024.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


_s/ Jill Schneider_
JILL SCHNEIDER #001619
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
Jill.Schneider@doj.state.or.us
Of Attorneys for Defendant

Page 2 -   NOTICE OF REMOVAL
JS/lnt/960166036

2/22/2024 12:58 PM
24CV09189

1
2
3
4              IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                          FOR THE COUNTY OF LANE

6    HAYLEE CRAMBLIT,                           Case No.

7              Plaintiff,                       PLAINTIFF'S COMPLAINT
                                                (ORS 659A.199; ORS 659A.203;
8         vs.                                   42 U.S.C. § 1983)

9    STATE OF OREGON, BY AND THROUGH            AMOUNT CLAIMED IN PRAYER:
     THE OREGON DEPARTMENT OF                   $2,090,000 (ORS 21.105(1))
10   HUMAN SERVICES, JODIE HOBERG, in
     her individual capacity, and BRIAN         NOT SUBJECT TO MANDATORY
11   YARNELL, in his individual capacity,       ARBITRATION

12            Defendants.                       DEMAND FOR JURY TRIAL

13                                              FILING FEE PER ORS 21.160(1)(d): $884

14         Plaintiff Haylee Cramblit appears herein to bring the following complaint

15   against the Defendants.

16                                    PARTIES

17                                      1.

18         Plaintiff, Haylee Cramblit, is an individual and a resident of Linn County,

19   Oregon.

20                                      2.

21         Defendant State of Oregon, by and through the Oregon Department of

22   Human Services (ODHS), is a public body and at all material times was operating as a

23   public employer in the county of Lane.

24                                      3.

25         Defendant Jodie Hoberg is an individual and a resident of the state of

26   Oregon, and at all material times was a Child Welfare Supervisor for ODHS.

     1 –  PLAINTIFF'S COMPLAINT                          HUTCHINSON COX
                                                           ATTORNEYS
                                                  940 WILLAMETTE STREET, SUITE 400
                                                           PO BOX 10886
                                                         EUGENE, OR  97440
                                                          (541) 686-9160

4.

Defendant Brian Yarnell is an individual and a resident of the state of Oregon and at all material times was a Senior Human Resources Analyst for ODHS.

5.

All actions giving rise to the claims in this case occurred in Lane County, Oregon.

FACTS COMMON TO ALL CLAIMS

6.

Plaintiff was hired by ODHS on November 30, 2020, as a Social Service Specialist 1, Child Protective Service Worker (CPSW) until she was fired, allegedly for cause, on February 28, 2023.  As a CPSW, Plaintiff's primary responsibility was to respond to assigned referrals regarding alleged child abuse and/or neglect of minors within Lane County and to always act in furtherance of the protection of the allegedly neglected child.

7.

Plaintiff performed exceptionally well in her position.  She was a passionate and dedicated advocate for children.  Plaintiff received positive performance feedback and an excellent performance evaluation.  She was never reprimanded or counseled during her employment with ODHS, and never the subject of discipline prior to her termination.

8.

As the front-line intake CPSW, Plaintiff was required to work almost exclusively in the field.  She had to locate the abusive and/or neglectful parents, assess the child's living conditions, and develop plans of action to protect children in immediate danger.  Oftentimes, Plaintiff had to physically remove a child from their parent to protect them.  This work is as dangerous as it is invaluable.

2 –  PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

9.

Plaintiff had no prior experience as a CPSW when she was hired by ODHS to protect the abused and neglected children of Lane County.  ODHS did not begin training Plaintiff for her role within the agency until January 2021.  Beginning then, and for the next six weeks, Plaintiff was trained to be a CPSW by sitting in front of a computer and listening to instruction over Zoom.  It was in this format that Plaintiff was trained in all areas of child welfare.

10.

After her six weeks of Zoom training, Plaintiff was supposed to be assigned to an experienced trainer who would accompany Plaintiff on all field work for the first year of her employment.  This manner of training is intended not only to provide new CPSWs the guidance needed to develop into effective case workers, but also to provide them with protection in unknown and potentially volatile situations.

11.

Defendant ODHS did not provide Plaintiff with an experienced trainer for the first year of her employment.  Rather, she was accompanied by a fellow employee for most field work for the first three months after completion of her Zoom-based training.  After expiration of that three-month period, Plaintiff was sent into the field alone.

12.

Because Plaintiff was required to work alone with such little experience, she relied heavily on communication with her supervisor to guide her decisions in the field.  This manner of training was inconsistent, though, because ODHS continuously reassigned her to different supervisors, assigning her to four different supervisors during her first year of employment.

3 –  PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

13.

In addition to its policy that a new CPSW be assigned to a field trainer for their first year, ODHS also had a formal policy that encouraged heavy utilization of law enforcement agencies for protection and assistance in the field.  In practice, though, each of Plaintiff's initial four supervisors advised her that calling on law enforcement for assistance in interviewing a child, accessing an unsafe home, or executing a removal of a child was strongly discouraged because of the additional time and burden it added to the CPSW's process and because of law enforcement's lack of trauma-based training.

14.

CPSWs have heavy caseloads and are required to act quickly and efficiently to respond to a report of an unsafe child.  CPSWs are required to discuss every substantive action taken in the field with their supervisor.  However, supervisor availability is very limited.  Plaintiff was instructed numerous times by her supervisors to make the best decision she could in the moment.

15.

Plaintiff was instructed by her various supervisors that ODHS policy is "flexible."  She was taught that CPSWs can bend the policies to fit the needs of a situation if they were acting in the best interest of the child.  For example, during Plaintiff's employment, supervisors instructed on and condoned out-of-policy actions and decisions allowing removal of a child with no prior contact with the parents; entering and viewing a living area with permission from someone else living on the property; and making decisions impacting a child after only seeing the child, but without first having a conversation with the child or the parent about the child's safety.

///

4 –  PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

16.

On October 26, 2022, Plaintiff was assigned a referral related to the alleged abuse and neglect of a three-year-old child (the Child). Allegations in the referral indicated that the Child was being housed in an unsafe, unsanitary, and hazardous environment. It was reported that the child was being housed in a small trailer that did not have running water or a functional toilet, that the child was exposed to drugs and drug paraphernalia, and that the child was exposed to open waste. The assignment required a response action from Plaintiff within 24-hours.

17.

After receiving the referral regarding the Child, Plaintiff reviewed the matter and discovered that the Child had been the subject of a prior report and investigation by ODHS. In that earlier investigation, Plaintiff's fellow CPSW Nicole Tucker discovered the Child had been exposed to illegal substances by his mother (Mother) while in utero and was being neglected and exposed to illegal substances. In that prior assessment of the Child, Ms. Tucker put in place a safety plan for the Child that involved the assistance of the Child's aunt (Aunt 2), and the provision of drug treatment for Mother.

18.

Upon discovering Ms. Tucker's prior involvement with the Child and Mother, Plaintiff contacted Ms. Tucker to gather additional information that could help Plaintiff to determine the safety of the Child and to build rapport with Mother.

19.

Ms. Tucker remembered the Child and shared with Plaintiff her concerns about Mother's drug use and the Child's likely exposure to it and other dangers present in the living condition. Ms. Tucker was familiar with Aunt 1, the owner of the property (the Property) where the Child resided. Ms. Tucker informed Plaintiff that

5 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

Exhibit 1, Page 5 of 26

1  she had a positive working relationship with Aunt 1 and other members of the

2  Child's family, including Mother.  Ms. Tucker explained that Mother and the Child

3  were staying in a recreational vehicle (the RV) on the Property which was accessible

4  only by first accessing the Property and following a dirt road through it.

5                                        20.

6        Because of her prior experience with the Child and his family, Ms. Tucker

7  agreed to accompany Plaintiff to the Property.  On October 27, 2022, Plaintiff and

8  Ms. Tucker drove to the Property.  They were met at the Property's front gate by

9  Aunt 1.  Aunt 1 recognized Ms. Tucker and immediately informed her that she had

10  been having ongoing concerns about the Child's safety since the termination of

11  Ms. Tucker's prior involvement.

12                                        21.

13        Aunt 1 reported to Plaintiff and Ms. Tucker observing several concerning

14  issues regarding the Child.  She stated that she had witnessed the Child's parents

15  and other unknown individuals coming and going from the RV at all hours of the

16  night.  Aunt 1 explained that this observation was consistent with what she observed

17  of the Child's parents when they were actively using methamphetamine and heroin.

18  Aunt 1 further reported that the outside of the RV was full of trash, that she had

19  observed the Child wearing the same dirty clothes for multiple days, that he

20  appeared unbathed, that he complained of hunger, and that his was minimally

21  verbal, well below that of a normally developing three-year-old.  Aunt 1 further

22  disclosed that Mother had told her that the Child was "unwilling" to eat and would

23  therefore go several days without eating.  Aunt 1 stated that the Child is often left

24  with her for long periods of time during which Aunt 1 cannot reach Mother.

25  ///

26  ///

6 –  PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

22.

Aunt 1 invited Plaintiff and Ms. Tucker onto the Property and directed them down the dirt path that led to the RV. Aunt 1 stated that she did not want to accompany them to the RV because she was fearful that Mother would harm her if she discovered that she was helping ODHS.

23.

Plaintiff and Ms. Tucker thereafter walked to the RV. Plaintiff observed directly around the outside of the RV mounds of garbage, rotting food, tools and knives. Plaintiff noticed with alarm that the water and sewage lines to the RV were disconnected, indicating there was no running water or working toilets/sinks in the RV. Plaintiff knocked on the RV's door multiple times with no response.

24.

Plaintiff and Ms. Tucker returned to the front of the Property and spoke with Aunt 1 who agreed to call Plaintiff if the parents returned to the Property. Aunt 1 also gave Plaintiff contact information for Aunt 2, Mother's sister-in-law who had served as the Child's safety service provider during Ms. Tucker's prior involvement. Plaintiff called Aunt 2 who reported that she was the owner of the RV where the Child was residing. She stated that she allowed the family to reside in her RV when the Child was born with the understanding that they would only be there for a few months. Mother and the Child's father had refused to leave the RV, despite not paying any rent to Aunt 1 or Aunt 2.

25.

On October 28, 2022, Aunt 1 called Plaintiff and told her that the parents had returned to the property in the middle of the night but had since left, and that they had left the Child with her. Plaintiff told Aunt 1 that she would be over to the Property that day to speak with Mother, who Aunt 1 was contacting to return to get the Child.

7 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

26.

Plaintiff thereafter called her supervisor, Defendant Hoberg, to discuss with her the unsuccessful attempt at initial contact with Mother the previous day.  Plaintiff informed Defendant Hoberg that she had observed large piles of garbage, enough to fill multiple dumpsters, around the RV, and that the RV did not have running water or working sewage or electricity.  Plaintiff informed Defendant Hoberg that although Aunt 1 and Aunt 2 had suspicions of Mother's substance use, they were unwilling to act as safety service providers for the Child.  Plaintiff informed Defendant Hoberg that Aunt 1 was trying to contact Mother and that Aunt 1 currently had possession of the Child but was unwilling to keep him.

27.

During this same call, Plaintiff told Defendant Hoberg that she had concerns regarding the inside of the RV because the initial screening report had indicated that the Child had access to drug paraphernalia and that she had observed that the trailer did not have running water for the Child.  Plaintiff informed Defendant Hoberg that Aunt 1 was the owner of the Property and that Aunt 2 was the owner of the RV, and that both of them had expressed concerns about the Child's safety living in the RV. Plaintiff expressed her concern to Defendant Hoberg that she did not have enough information to assess the Child's safety, although it seemed he was in danger in his current living situation.  In response, Defendant Hoberg instructed Plaintiff to "just make sure that the trailer is owned by [Aunt 2]" and with that confirmation, Aunt 2 could give Plaintiff permission to enter and view the inside of the RV.

28.

Prior to this, Plaintiff had never entered a subject's home without their permission, and she would never have considered doing so this time without Defendant Hoberg's direction to her to do so.

8 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

29.

At no time did Defendant Hoberg advise or even suggest that Plaintiff should contact law enforcement for assistance in accessing the inside of the RV.  Neither did she tell Plaintiff that she did not need to enter the RV and should discontinue efforts to view the inside of the RV.  Had she done so, Plaintiff would have followed her supervisor's direction.

30.

After Plaintiff's call with Defendant Hoberg, she informed Ms. Tucker that Defendant Hoberg wanted them to get permission from the owner of the RV to enter it and take photographs of its condition.

31.

Aunt 1 informed Plaintiff and Ms. Tucker that her continued efforts to contact Mother had been unsuccessful.  Aunt 1 expressed her concern with the lack of contact from Mother because she was unwilling to continue caring for the Child and needed either Mother to take him back, or for ODHS to take possession of him and make other arrangements for his safe care.

32.

Thereafter, still on October 28, 2022, Aunt 1 allowed Plaintiff and Ms. Tucker access to the Property and they drove a state-issued vehicle to the location of the RV.  Aunt 1 and her cousin (Cousin) walked down the dirt path to join Plaintiff and Ms. Tucker at the RV.  Aunt 1 and Cousin carried with them a shovel and a hammer, which Plaintiff later discovered they intended to use to gain access to the RV.

33.

When Aunt 1 and Cousin arrived at the RV, they unsuccessfully used the tools they had brought to try to pry open the RV's door.  Aunt 1 continued trying to contact Mother but was unsuccessful.  Aunt 1 then contacted Aunt 2 to ask if she

9 –  PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1  had a key to her RV. Aunt 2 said she did, but that she believed Mother had changed

2  the lock. Aunt 1 then asked Aunt 2 if she could break the window to allow Plaintiff

3  and Ms. Tucker access to the RV. Aunt 2, the owner of the RV, gave her permission

4  to break the window of her RV and to allow Plaintiff and Ms. Tucker inside to view

5  the conditions the Child was living in.

6                                    34.

7          Cousin was very pregnant at this time. After receiving the permission from

8  Aunt 2 to break the RV's window, Cousin raised the hammer with the intent to strike

9  the window. Ms. Tucker immediately stepped in to stop Cousin from breaking the

10  window, stating it was unsafe given her pregnancy. Cousin gave the hammer to

11  Ms. Tucker who used it to break the RV's window. The door was then unlocked from

12  the inside, and Plaintiff and Ms. Tucker entered the RV.

13                                    35.

14          Inside the RV, Plaintiff confirmed that there were no operating utilities. There

15  was no running water, electricity or flushing toilets. There was a bucket in the toilet

16  containing human feces and an over-flowing litter box. The tables, floor, and the

17  only bed in the RV were littered with drug paraphernalia, including used heroin foils,

18  loose marijuana, and bongs. There was garbage on all the surfaces. There was no

19  carpet or other inside flooring, only plywood on the RV's floor. Plaintiff took

20  photographs of these conditions.

21                                    36.

22          Having observed the utterly disgusting conditions the Child was being held in,

23  Plaintiff had sufficient grounds to remove the Child from Mother's care. Having

24  viewed the drug paraphernalia in areas accessible to the Child, including the bed in

25  which it was clear he had been co-sleeping, Plaintiff had sufficient grounds to have

26  the Child tested for drugs.

10 –     PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

Exhibit 1, Page 10 of 26

37.

The Child's drug test was positive.  The Child, just three years old, had heroin and methamphetamine in his system.  Had Plaintiff not entered the RV and witnessed the open drug paraphernalia, she would not have had grounds to have the Child drug tested.

38.

After viewing the inside of the RV, Ms. Tucker called Defendant Hoberg for further instruction.  Ms. Tucker described to Defendant Hoberg the condition of the inside of the RV and relayed the fact that the parents were still unreachable. Ms. Tucker and Plaintiff believed that because of their observations within the trailer, the inability to reach the parents, and Aunt 1's inability to care for the Child, a Protective Action Plan was needed to ensure the Child remained safe from further exposure to illicit substances and unsafe home conditions.  Defendant Hoberg agreed with this plan.

39.

Plaintiff and Ms. Tucker, Aunt 1 and the Child then convened at Aunt 2's home.  Here, Plaintiff observed the Child for the first time.  He was extremely thin, had visibly rotten teeth, and was unable to coherently converse with them.  While at Aunt 2's home with the Child, Plaintiff received a call from Mother which she conducted over speakerphone in the presence of Ms. Tucker, Aunt 1, Aunt 2, and Cousin.  During that call, Mother admitted to Plaintiff that she and the Child's father regularly used heroin and methamphetamine in the RV with the Child present.  The Child was left at Aunt 2's home pending further action from ODHS.

40.

On November 1, 2022, Plaintiff and Ms. Tucker met with Defendant Hoberg, Assistant Attorney General Tricia Gonzalez, and court worker Megan Meyer to

11 --    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

discuss the Child's case.  During that meeting, Plaintiff and Ms. Tucker discussed in detail the conditions inside the RV and the concern that the parents had been unreachable during the entirety of the outreach.  They further expressed their concern that the Child would continue to be exposed to dangerous and unsanitary living conditions without ODHS intervention.  Based on that information from Plaintiff and Ms. Tucker, Defendant Hoberg and AAG Gonzalez determined that the state needed to petition for custody of the Child while Aunt 2 attempted to become certified as a resource parent for the Child.  At no time during that meeting did Defendant Hoberg express concern with Plaintiff's entry into the RV or disclose to AAG Gonzalez that she had instructed Plaintiff to obtain permission from the owner of the RV to enter it and take the photographs of its condition.

41.

Also on November 1, 2022, Mother made a report of burglary to the Lane County Sheriff's Department.  She claimed that she was the owner of the RV and that on October 28, 2022, her sister, Aunt 1, had broken into the RV to allow ODHS case workers access to it.

42.

A "shelter hearing" was convened on November 7, 2022, to determine the ODHS's petition for temporary custody of the Child.  Plaintiff had printed copies of photographs she had taken, including inside the RV, and given those to all involved parties prior to the hearing.

43.

On information and belief, the Child's father reported to his attorney that the RV had been broken into.  That attorney informed the state's attorney that, based on that information from the father, they had concerns about how some of the photographs were obtained.  Upon learning this, Plaintiff explained to the state's

12 –     PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1   attorney that the RV was owned by Aunt 2 who had allowed them access.  Plaintiff

2   supported her position the following day by providing a copy of Aunt 2's title to the

3   RV to the state's attorney. The state's attorney, however, chose not to introduce the

4   photographs into evidence at the shelter hearing.  They did, however, introduce

5   Plaintiff's report which contained her narrative description of the inside of the RV.  At

6   the conclusion of the shelter hearing, temporary custody of the Child was awarded

7   to the state.

8                                           44.

9       After the shelter hearing, Plaintiff informed Defendant Hoberg that the Child's

10  parents had falsely reported that they were the owners of the RV and that it had

11  been illegally broken into by Aunt 1 to allow Ms. Tucker and Plaintiff access.  Plaintiff

12  assured Defendant Hoberg that she and Ms. Tucker had received permission from

13  the actual owner, Aunt 2, to access the trailer per Defendant Hoberg's direction to

14  them.  Plaintiff also clarified to Defendant Hoberg that it was Ms. Tucker who broke

15  the window, not Aunt 1.

16                                          45.

17      On November 8, 2022, Plaintiff and Defendant Hoberg became aware that on

18  November 1, 2022, Mother had made a report to the Lane County Sheriff's

19  Department regarding the CPSWs' entry into the RV. According to Mother's report,

20  she claimed to be the owner of the RV that was broken into on October 28, 2022, to

21  allow ODHS caseworker access.

22                                          46.

23      Defendant Hoberg was alarmed that she may have instructed Plaintiff and

24  Ms. Tucker to access the RV illegally.  To avoid the potential consequences of that

25  act, Defendant Hoberg made the decision to deny her role in the entire event and

26  place the blame on Plaintiff and Ms. Tucker.

13 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

47.

On November 8, 2022, Defendant Hoberg contacted ODHS Human
Resources to report that Plaintiff and Ms. Tucker had come to her on November 7
to report that Ms. Tucker had broken the window of a trailer without the owner's
permission to gain access to it.  Defendant Hoberg did not report to ODHS HR
that, in fact, she had advised Plaintiff that, in the parents' absence, she could obtain
permission from the owner of the RV to enter it and observe the Child's living
conditions.  Defendant Hoberg further did not disclose that Plaintiff and Ms. Tucker
called her after observing the inside of the RV and discussed with her their
observations and reported that Mother still was unreachable.  Defendant Hoberg
also failed to disclose to ODHS HR that she met with Plaintiff and Ms. Tucker on
November 1, 2022, to discuss the Child's case and, at that time, a discussion was
again had about the observations of the inside of the trailer and the absence of the
parents from the scene.  Defendant Hoberg failed to report that during that
November 1, 2022, meeting, she encouraged and advised AAG Gonzalez to
proceed with a temporary custody petition based on the conditions found inside
the trailer.

48.

Instead of reporting the foregoing accurate depiction of events, Defendant
Hoberg falsely reported to ODHS HR on November 8, 2022, that she had expressly
instructed Plaintiff not to enter the RV even if owner-Aunt gave permission; that
Plaintiff and Ms. Tucker failed to contact her after they entered the RV to report that
they had entered the trailer and taken photographs; and that she had no idea they
had entered the RV until that disclosure was made to her on November 7, 2022.

///

///

14 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

49.

As a result of Ms. Hoberg's false report to ODHS HR, an investigation of Plaintiff's alleged misconduct was commenced. The allegations against Plaintiff were based entirely on the false reporting from defendant Hoberg.

50.

During the pendency of that investigation and up through November 28, 2022, Plaintiff remained in her position, actively engaging in the work of a CPSW with no additional oversight or instruction from Defendant Hoberg.

51.

In fact, Defendant Hoberg never confronted Plaintiff with a concern or counseling based on Plaintiff's alleged disobedience of her instruction not to enter the RV. This, of course, is because Defendant Hoberg knew that she had instructed Plaintiff to obtain Aunt 2's permission to enter the RV. If Plaintiff had violated a law or ODHS policy, she had done so at Defendant Hoberg's direction.

52.

On November 24, 2022, Plaintiff was instructed by Defendant Hoberg to appear for a "fact finding" interview with Defendant Yarnell and herself. The interview was held on November 28, 2022, and was recorded. The interview proceeded as an examination of Plaintiff, with close-ended questions directed to her in search of a "yes" or "no" response. The accusations made during that interview were duplicative of the false reporting that Defendant Hoberg had made to ODHS HR on November 8, 2022. No new information was brought forward by Defendant Yarnell, and Plaintiff was given no opportunity to introduce anything outside of Defendant Yarnell's agenda. Everything discussed by Defendant Yarnell had been known to ODHS since, at the latest, November 8, 2022, when Defendant Hoberg made her false report. Throughout that time, Plaintiff had been allowed to continue

15 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1   acting as the sole person in charge of her cases, using her judgment and discretion
2   to address and solve the urgent needs of abused children.

3                                            53.

4         During the November 28, 2022, interview, Plaintiff was accused of illegally and
5   against ODHS policy entering the RV and taking photographs.  In response to this
6   allegation, Plaintiff disclosed to Defendant Yarnell and ODHS that Defendant Hoberg
7   had instructed her to obtain permission to enter the RV from Aunt 2, its owner, and
8   then to enter the RV.  As such, Plaintiff reported information that she believed –
9   based on the position ODHS was then taking – was evidence of Defendant Hoberg's
10  violation of ODHS policy and state law.

11                                           54.

12        As noted, there was no new information about Plaintiff's conduct discovered
13  at the "fact finding" interview.  At the conclusion of the interview, she informed
14  Defendant Yarnell and Defendant Hoberg that her remaining duties for that day
15  included a home visit and removal of a child.  Neither intervened to stop her from
16  engaging in this work or made any comments regarding her judgment or ability to
17  adequately follow policy when removing the child that afternoon.

18                                           55.

19        After the November 28, 2022, interview, to discredit Plaintiff's report of she
20  had been acting at Defendant Hoberg's direction, Defendant Hoberg made
21  additional false reports to Defendant Yarnell about her interactions with Plaintiff
22  regarding the Child's case.  She reported to Defendant Yarnell that she had a
23  conversation with Plaintiff on October 28, 2022, in which she "specifically asked
24  [Plaintiff] not to access the RV even if the relatives gave permission as it was not
25  necessary and that [the Child] was safe with relatives."  Defendant Hoberg made
26  these additional false statements to retaliate against Plaintiff for reporting her

16 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1    violations of policy and law, and to encourage ODHS to conclude that that Plaintiff

2    had engaged in serious misconduct deserving of termination for cause.

3                    56.

4        In further retaliation of Plaintiff for making her report, Defendant Hoberg

5    recommended that ODHS place Plaintiff on administrative leave, commencing

6    November 29, 2022, because it could no longer trust her judgment.  This reason was

7    a pretextual reason.  The real motivation for Defendant Hoberg's insistence that

8    Plaintiff be placed on leave was to discredit her and to remove her from access to

9    ODHS witnesses and information that could corroborate Plaintiff's report that

10    Defendant Hoberg instructed her to enter the RV.

11                    57.

12        During a December 14, 2022, court hearing regarding the Child's case, the

13    Child's parents admitted to the allegations of neglect and abuse of the Child, and

14    admitted they could not care for him given their life circumstances.  The Child was

15    placed into the custody of the state and remains in foster care.  Absent the Child's

16    parents becoming responsible caregivers, this was the outcome sought by the state.

17    Nothing Plaintiff did in relation to following her supervisor's direction to enter the

18    RV compromised the state's position in the Child's case.

19                    58.

20        On January 4, 2023, Defendant Yarnell for ODHS sent a letter to Plaintiff

21    alerting her that the investigation into the "charges" against her was ongoing, but

22    that no further information could be shared with her about the status of the charges.

23    This information caused Plaintiff significant panic and alarm, believing she was being

24    criminally investigated for actions taken in the course of her employment at the

25    direction of her supervisor.

26    ///

17 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

59.

By letter dated January 20, 2023, ODHS notified Plaintiff that it was commencing the pre-dismissal process for just cause based on the following: failure to adhere to the Maintaining a Professional Workplace policy by entering the RV without the parents' permission; failure to follow ODHS Casework Practice by failing to make initial contact within 24 hours; failure to use sound professional judgment by entering the RV without the parents' permission; and violation of the public's trust by entering the RV without the parents' permission and concealing that information from her supervisor, Defendant Hoberg.

60.

On January 29, 2023, Plaintiff submitted to ODHS, through Defendant Yarnell, a statement of evidence that explained and rebutted the facts being relied on by ODHS to conclude Plaintiff had committed the policy violations set forth in the pre-dismissal letter. With respect to the failure to make contact within 24 hours, Plaintiff explained in detail the circumstances of her attempts to contact Mother in person at Aunt 1's property within that time frame. The facts presented by Plaintiff on that issue were not in dispute and conclusively established she had not violated that policy. The remaining alleged policy violations all turned on whether Plaintiff or Defendant Hoberg was telling the truth. If Plaintiff's statement was accurate, then she could not be dismissed for cause because she had acted on the instruction and with the knowledge and approval of Defendant Hoberg. If Plaintiff's statement was accurate, it was Defendant Hoberg who had engaged in conduct allegedly sufficient to justify termination for cause.

61.

Defendant Yarnell and ODHS did nothing to in response to Plaintiff's January 29, 2023, letter. It did not seek a further interview from her to clarify the

18 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1   actions taken within 24 hours of assignment to confirm she had complied with the

2   Casework Practice policy.  It did not question Ms. Tucker, Aunt 1, Aunt 2, or Cousin,

3   regarding the decision to enter the RV upon permission to do so from its owner, Aunt

4   2.  If it had, it would have learned from Ms. Tucker, Aunt 1, Aunt 2 and Cousin that

5   Plaintiff reported to them a consistent narrative, that Plaintiff had been instructed to

6   obtain permission from the RV's owner for entry in the absence of the parents.  ODHS

7   did not review Defendant Hoberg's phone records which would have shown that she

8   spoke with Ms. Tucker over the phone after her and Plaintiff's entry into the RV, in

9   direct contravention to Defendant Hoberg's denial of any contact with Plaintiff and

10  Ms. Tucker following their entry into the RV.  ODHS also did not interview the other

11  participants in the November 1, 2022, meeting on the Child's case, all of whom would

12  have corroborated that Defendant Hoberg was aware at that meeting that Plaintiff

13  had entered the RV to obtain the photographs without the parents' permission.

62.

15  Instead of performing a proper investigation, ODHS and Defendant Yarnell

16  simply forwarded Plaintiff's letter to Defendant Hoberg, who in turn denied the

17  allegations, accusing Plaintiff of dishonesty.

63.

19  Plaintiff also asked that the information from her January 29, 2023, letter be

20  considered in the investigatory process and that the letter itself be included with all

21  investigatory materials going forward.  Defendant Yarnell assured Plaintiff in writing

22  that he would include the information and her letter in his reporting.  He did not,

23  based on whole or in part on Defendant Hoberg's assurance that Plaintiff was lying.

24  Defendant Yarnell's refusal to include Plaintiff's exculpatory evidence in the

25  investigatory material, or to even look into it to see if it had merit, denied Plaintiff a

26  fair opportunity to be heard on the charges against her.

19 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

64.

In her January 29, 2023, letter to ODHS, Plaintiff also reported that Defendant Hoberg continued to violate ODHS rules and policies regarding confidentiality and privacy after Plaintiff was placed on leave by contacting Plaintiff numerous times via her personal phone over text to discuss case sensitive information and have Plaintiff participate in case staffings.

65.

Plaintiff further reported to Defendant Yarnell and ODHS on January 29, 2023, that Defendant Hoberg had directed her to violate state public records laws by instructing her to delete public records. Specifically, Plaintiff reported that on December 13, 2022, at 2:54 pm, Defendant Hoberg texted her the following: "And, please be sure to delete these messages as now I'm thinking we prob shouldn't be texting anything case specific."

66.

ODHS also did nothing to follow up on Plaintiff's January 29, 2023, reports about Defendant Hoberg's misconduct. Namely it did not request copies of Plaintiff's texts messages which conclusively prove Defendant Hoberg's violations of ODHS policy and state law.

67.

On February 28, 2023, ODHS terminated Plaintiff's employment for cause, based on the allegations and alleged facts described in the January 20, 2023, pre-dismissal letter. Each of the stated reasons for termination is a pretext, intended to hide Defendants' illegal motives for retaliation. As evidence of pretext, Plaintiff is aware of two other instances at ODHS during her employment that a CPSW entered homes without the permission of the allegedly abusive/neglectful parents but were not reprimanded or disciplined for that action. The first instance was in the presence

20 –     PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1   of law enforcement in which the CPSW had the child allow them access to the home,

2   then proceeded to conduct a search.  In the second instance, the CPSW entered the

3   parent's unlocked trailer home and walked through the living area taking pictures of

4   the inside.  When questioned about entering the homes without permission of the

5   parents, both CPSW justified their conduct as being undertaken in the interest of the

6   involved child's safety.

7                                    68.

8          The termination decision was either made or substantially influenced by

9   Defendant Hoberg, motivated by her desire to retaliate against Plaintiff for disclosing

10  her violation of state policy, rule and law.

11                                   69.

12         Plaintiff is passionate about working in child welfare.  It is the career field she

13  intended to pursue for the entirety of her working life.  The work fulfilled a desire to

14  help children in need and to protect the most vulnerable in our society.  She took

15  pride in her role as a CPSW and found joy and satisfaction in her work.  Since her

16  termination, Plaintiff has applied for several positions within the public service field,

17  including protective services and various dispatch services.  While she is qualified for

18  the positions and there is an urgent need for public welfare workers locally, Plaintiff

19  has been unable to obtain a position because of the impact of the wrongful

20  termination from ODHS.  Instead, Plaintiff had to take a position working at Subway

21  and as an office assistant.

22                                   70.

23         As a direct result of her termination from ODHS, Plaintiff has suffered the

24  following economic losses: lost past wages, including benefits and overtime, in the

25  estimated amount of $150,000 through the date of trial; lost future wages in the

26  ///

21 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1 | estimated amount of $840,000 from the date of trial through age 67; and the lost

2 | value of an academic stipend from ODHS in the amount of $80,000.

3 | 71.

4 | Plaintiff was accused of deceit and poor judgment during the termination

5 | process. Her termination letter stated that she is not credible and impliedly

6 | concluded that she was dishonest, none of which is true. Plaintiff was humiliated

7 | from this experience. She is unable to work in the field she worked so hard to enter,

8 | her character has been maligned in the local public welfare industry, making it

9 | impossible so far for her to reenter the profession she loves. Plaintiff has suffered

10 | depression, anxiety, sadness, and anger as a result of Defendants' actions. She has

11 | suffered physical injury from the stress caused by Defendants' actions. Plaintiff was

12 | only 23 years old when Defendant Hoberg lied about the directions she gave to

13 | Plaintiff, her supervisee; when Defendant Yarnell dismissed her as unimportant and

14 | undeserving of a proper investigation; and when ODHS allowed its employees to

15 | retaliate against Plaintiff simply because she reported the truth. Plaintiff will not

16 | regain the trust and optimism that she has lost as a result of the Defendants' actions.

17 | As a direct result of Defendants' actions described herein, Plaintiff has suffered non-

18 | economic damages in the amount of $1,500,000.

19 | 72.

20 | Plaintiff has hired an attorney to represent her in this case. She has incurred

21 | and will continue to incur reasonable attorney's fees herein and is entitled to

22 | recovery of those fees pursuant to ORS 659A.885 and 42 U.S.C. § 1988.

23 | **FIRST CLAIM FOR RELIEF**

24 | **(Whistleblower Retaliation – ORS 659A.199 Against ODHS)**

25 | 73.

26 | Plaintiff incorporates paragraphs 1-72, above.

22 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

74.

As set forth above, on November 28, 2022, and on January 29, 2023, Plaintiff reported in good faith information about Defendant Hoberg to ODHS that she believed was evidence of violations of federal or state rule, law or regulation.

75.

With a motivation to retaliate against Plaintiff for engaging in protected whistleblowing, ODHS terminated Plaintiff's employment.

76.

Defendant Hoberg was either the final decision maker in the termination decision, or she had control or substantial influence over the individual or individuals who made the termination decision. As such, her retaliatory motive is attributable to ODHS.

77.

As a result of ODHS's retaliation in violation of ORS 659A.199, Plaintiff has and will continue to suffer the economic damages set forth in paragraph, the non-economic damages set forth in paragraphs 70 and 71, and the attorney's fees described in paragraph 72.

### SECOND CLAIM FOR RELIEF

### (Whistleblower Retaliation – ORS 659A.203 Against ODHS)

78.

Plaintiff incorporates paragraphs 1-72, above.

79.

As set forth above, on November 28, 2022, and on January 29, 2023, Plaintiff reported in good faith information about Defendant Hoberg to ODHS that she believed was evidence of violations of federal or state rule, law or regulation.

///

23 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

Exhibit 1, Page 23 of 26

80.

With a motivation to retaliate against Plaintiff for engaging in protected whistleblowing, ODHS terminated Plaintiff's employment.

81.

Defendant Hoberg was either the final decision maker in the termination decision, or she had control or substantial influence over the individual or individuals who made the termination decision. As such, her retaliatory motive is attributable to ODHS.

82.

As a result of ODHS's retaliation in violation of ORS 659A.203, Plaintiff has and will continue to suffer the economic damages set forth in paragraph, the non-economic damages set forth in paragraph 70 and 71, and the attorney's fees described in paragraph 72.

### THIRD CLAIM FOR RELIEF

### 42 USC § 1983 – Violation of Due Process

### (Against Defendants Hoberg and Yarnell)

83.

Plaintiff realleges paragraphs 1-72, above.

84.

At all material times, Defendants Yarnell and Hoberg were acting under of color of state law.

85.

Plaintiff was a public employee, working for ODHS for over two years at the time of her termination. She had a recognized property interest in her continued public employment and was entitled to due process before that property right was taken from her. Due process in this situation required, at a minimum, notice of the charges, an opportunity to be heard, and an impartial decision maker.

24 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

Exhibit 1, Page 24 of 26

86.

As described above, Plaintiff was not given a Constitutionally adequate opportunity to be heard on the charges for which she was terminated. Defendant Yarnell took no actions to consider or investigate Plaintiff's evidence set forth in her January 29, 2023, letter refuting the charges against her. Defendant Hoberg affirmatively interfered with Plaintiff's opportunity to be heard by making the false statements described above. Plaintiff was further denied the opportunity to be heard when Defendant Yarnell intentionally omitted the exculpatory evidence Plaintiff had submitted from his investigatory material and report. Plaintiff's access to post-termination review of the decision did not cure the due process violation because Defendant Yarnell failed to include her exculpatory information in that review.

87.

Plaintiff's right to be heard at the pre-dismissal hearing was also constitutionally deficient because the termination decision had been made before her hearing, as evidenced by Defendant Yarnell's refusal to consider, or even look into, Plaintiff's exculpatory information.

88.

Plaintiff's termination decision was not made by an impartial decision maker. Defendant Yarnell was aware that Defendant Hoberg knew that Plaintiff had reported her misconduct as described above, yet he still allowed Defendant Hoberg to make or to substantially influence the decision to terminate Plaintiff's employment.

89.

Had Plaintiff been given due process, including a Constitutionally adequate opportunity to be heard and an impartial decision maker, she would not have been terminated. None of the alleged bases for termination would have been supported and no discipline would have been warranted.

25 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

6.     For any other relief the Court deems just and equitable.

DATED this 22nd day of February, 2024.

                              HUTCHINSON COX


                     By:   s/Andrea D. Coit
                           Andrea D. Coit, OSB #002640
                           acoit@eugenelaw.com
                           Jonathan M. Hood, OSB #133872
                           jhood@eugenelaw.com
                           Telephone:  541-686-9160
                           Facsimile:    541-343-8693
                           Of Attorneys for Plaintiff

                           Trial Attorney: Andrea D. Coit

27 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1                          **CERTIFICATE OF SERVICE**

2            I certify that on April  2  , 2024, I served the foregoing NOTICE OF REMOVAL upon

3    the parties hereto by the method indicated below, and addressed to the following:

4    Andrea D. Coit                          ___ HAND DELIVERY
     Jonathan M. Hood                        ___ MAIL DELIVERY
5    HUTCHINSON COX ATTORNEYS                 ___ OVERNIGHT MAIL
6    940 Willamette Street, Suite 400         _X_ SERVED BY E-FILING
     P.O. Box 10886                           _X_ SERVED BY E-MAIL -
7    Eugene, OR 97440                         acoit@eugenelaw.com
         *Attorneys for Plaintiff*
8

9

10                                           *s/ Jill Schneider*
                                             _____
11                                           JILL SCHNEIDER #001619
                                             Senior Assistant Attorney General
12                                           Trial Attorney
                                             Tel (503) 947-4700
13                                           Fax (503) 947-4791
                                             Jill.Schneider@doj.state.or.us
14                                           Of Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

Page 1 -   CERTIFICATE OF SERVICE
           JS/kt3/958885147